Mark N. Mutterperl (MM 1977)
Anita Tucker Smith (AS 2822)
Jessica S. Parise (JP 6111)
Fulbright & Jaworski L.L.P.
666 Fifth Avenue, 31st Floor
New York, New York 10103
Telephone: (212) 318-3000
Facsimile: (212) 318-3400

*Attorneys for Plaintiffs Pfizer Inc.*
*and Warner-Lambert Company LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

CV    8209

---

|                                      |   |                                   |
|--------------------------------------|---|-----------------------------------|
| PFIZER INC.                          | : |                                   |
| and                                  | : |                                   |
| WARNER-LAMBERT COMPANY LLC,          |   |                                   |
| *Plaintiffs,*                        | : |                                   |
|                                      | : |                                   |
| -against-                            | : | Civil Action No. _____   |
|                                      | : |                                   |
| ACTAVIS GROUP hf                     | : | COMPLAINT FOR PRELIMINARY         |
| and                                  | : | AND PERMANENT INJUNCTION          |
| ACTAVIS, INC.,                       | : | AND OTHER RELIEF                  |
|                                      | : |                                   |
| *Defendants.*                        | : | (Jury Trial Demanded)             |

----------------------------------------------------------- x

Pfizer Inc., ("Pfizer") and its wholly-owned subsidiary Warner-Lambert Company LLC

("Warner-Lambert") (Pfizer and Warner-Lambert, together "Plaintiff"), for their complaint

against defendants Actavis Group hf and Actavis, Inc. (together, "Actavis" or "Defendants"),

allege as follows:

## THE PARTIES

1.      Pfizer is, and at all relevant times has been, a corporation organized and existing

under the laws of the State of Delaware with its principal executive offices in New York, New

York.

2.      Warner-Lambert Company LLC is, and at all relevant times has been, a corporation organized and existing under laws of the State of Delaware with its principal executive offices in New York, New York.

3.      On information and belief, defendant Actavis Group hf is and at all relevant times has been, a limited liability company organized under the laws of Iceland with a place of business located at Dalshrauni 1, 220 Hafnarfirdi, Iceland.

4.      On information and belief, defendant Actavis, Inc. is, and at all relevant times has been, a corporation organized under the laws of the State of Delaware with its principal place of business located 200 Elmora Avenue, Elizabeth, New Jersey 07202.  On information and belief, Actavis, Inc. is a wholly owned subsidiary of Actavis Group hf.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367 and general principles of ancillary and pendent jurisdiction.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district. The infringing products at issue are being sold in this judicial district.

## STATEMENT OF THE CLAIM

7.      This case involves Defendants' manufacture, offer to sell, sale, and distribution of topical, first aid antibiotic ointments and creams ("Defendants' Infringing Products"), which specifically include, but are not limited to, the versions of their ointments and creams pictured in Exhibit 4 the "CVS Products" and Exhibit 5 the "Walgreen Products," as well as any other ointments and creams with similar packaging that use the following:

a.      a gold color confusingly similar to the distinctive gold color ("NEOSPORIN Signature Gold Mark") that Plaintiff owns and uses to distinguish all its

NEOSPORIN® products (topical, first aid antibiotic ointments and creams, including the

original NEOSPORIN Ointment ("Original NEOSPORIN"), NEOSPORIN Plus Pain Ointment,

and NEOSPORIN Plus Pain Cream (collectively, "NEOSPORIN Products")). True and correct

copies of the NEOSPORIN Products are attached hereto as Exhibits 1-3; and

        b.      packaging and tubes that look like the famous and distinctive trade dress

that Plaintiff owns and uses to distinguish its NEOSPORIN Products (the "NEOSPORIN Trade

Dress") (the NEOSPORIN Signature Gold Mark is an element of the NEOSPORIN Trade

Dress).

        8.      As a result, this action seeks injunctive and monetary relief for (a) trademark

infringement and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C.

§ 1125(a); (b) trade dress infringement under Section 43(a) of the Lanham Act, 15 U.S.C.

§ 1125(a); (c) false designation of origin in commerce under Section 43(a) of the Lanham Act,

15 U.S.C. § 1125(a); (d) trade dress dilution under Section 43(c) of the Lanham Act, 15 U.S.C.

§ 1125(c); (e) deceptive trade practices in violation of New York General Business Law § 349;

(f) trade dress dilution in violation of New York General Business Law § 360-1; (g) common law

unfair competition under the laws of the State of New York; and (h) unjust enrichment under the

laws of the State of New York.

## FACTS

        9.      Established in 1837, Pfizer began as a small, fine-chemicals business owned and

operated by two cousins in Brooklyn, New York. Today, Pfizer markets prescription medicines

and nonprescription (over-the-counter ("OTC")) medicines and products worldwide.

        10.     After recent mergers with Pharmacia Corporation and the Upjohn Company,

Pfizer is the world's largest research-based pharmaceutical company. Expending billions of

dollars in research, Pfizer offers the broadest array of medicines in the pharmaceutical industry,

25703450.1             - 3 -

covering virtually all therapeutic areas, used by an estimated 40 million patients each day. It has a long history of selling high quality medicines and products.

11. Plaintiff manufactures and markets a variety of high quality OTC medicines and products. It devotes substantial effort, time, and resources to developing and testing these products and to designing the packaging and graphics for those products. Packaging and graphics are important elements in marketing OTC products because they serve to distinguish Plaintiff's products from others on the market, to represent and convey a product's quality and value to consumers, and to designate Plaintiff as the source or origin of a product.

12. Among the OTC products that Plaintiff manufactures and markets are the NEOSPORIN Products, which are widely distributed and available in all leading channels of trade for OTC products, including drug stores, grocery stores, and mass merchandise stores.

13. The NEOSPORIN brand was first introduced in approximately 1953 and was acquired by Pfizer in 2000, when Pfizer acquired The Warner Lambert Company. Today, the Warner-Lambert Company LLC is a wholly-owned subsidiary of Pfizer and operates, in part, the NEOSPORIN brand. The NEOSPORIN Products comprise a family of ointments and creams that help speed the healing of minor cuts, scrapes, and burns, while preventing infection.

14. Original NEOSPORIN is a first aid, triple antibiotic ointment formulated with a unique and patented base. It has been shown in a clinical study to promote faster healing with less scarring than untreated wounds. Original NEOSPORIN has been an extremely successful product in the marketplace.

15. Plaintiff owns all right, title, and interest in and to all intellectual property associated with the NEOSPORIN Products in the United States.

25703450.1 - 4 -

16.     Such rights include, without limitation, the NEOSPORIN Signature Gold Mark and the NEOSPORIN Trade Dress.

The NEOSPORIN Signature Gold Mark

17.     The use of the NEOSPORIN Signature Gold Mark on the NEOSPORIN Products' packaging and tubes identifies and distinguishes the NEOSPORIN Products from the products of other sellers.

18.     Since at least 1989, Plaintiff and its predecessor have continuously used the NEOSPORIN Signature Gold Mark as part of the NEOSPORIN Trade Dress, as the predominant color on the NEOSPORIN Products' tubes and outside packaging and on marketing and advertising for the NEOSPORIN Products. The chart below depicts the NEOSPORIN Products' packaging evolution from 1989 to today (today's packaging is identical to the 2003 version):

# Neosporin Packaging Evolution

1989



1996



2003

1991



1996



2003



1991



1996



2003



19.     The NEOSPORIN Signature Gold Mark is a protectable trademark for first aid antibiotic ointment.

20.     The use of the NEOSPORIN Signature Gold Mark is famous, well known, and inherently distinctive in the OTC drug market.

21.     The NEOSPORIN Signature Gold Mark is an inherently distinctive symbol of great consumer goodwill.

### The NEOSPORIN Trade Dress

22.     Plaintiff sells NEOSPORIN Products in the distinctive NEOSPORIN Trade Dress

depicted below and in Exhibits 1-3.






23.     The NEOSPORIN Trade Dress consists of, among other elements, a rectangular

box, with an upright extension label on the rear of the box, use of the NEOSPORIN Signature

Gold Mark as the predominant background color, the distinctive green color ("NEOSPORIN

Green") for the lettering of the trademarked NEOSPORIN name and elsewhere; and use of a

curving arrow in the NEOSPORIN Signature Gold Mark.  See Exhibit 6, for a more complete list

of the trade dress elements, and a comparison of those elements with those of Defendants'

Infringing Trade Dress.

24.     The total overall impression of the packaging identifies and distinguishes the

NEOSPORIN Products from the products of other sellers.

25.     The use of the NEOSPORIN Trade Dress is famous, well known, and inherently

distinctive in the OTC drug market.

26. The NEOSPORIN Trade Dress is an inherently distinctive symbol of great consumer goodwill.

### The NEOSPORIN Signature Gold Mark and the NEOSPORIN Trade Dress

27. Plaintiff created the NEOSPORIN Signature Gold Mark and the NEOSPORIN Trade Dress, separately and jointly, at considerable expense. It has made a significant investment in creating packaging that would catch the consumer's eye, immediately upon looking at a shelf full of similar products, and would signal to consumers the source and origin of the NEOSPORIN Products.

28. Since 1997, Plaintiff has devoted over $184 million to advertise and promote its NEOSPORIN Products, including television and print marketing efforts. In part, as a result of these efforts, NEOSPORIN has been, for more than 10 years, the best-selling OTC topical, first aid antibiotic ointments and creams in the United States and is one of Plaintiff's top-selling products. For example, approximately 12 million households purchased NEOSPORIN Products in 2005 alone. Since 1997 alone, sales of NEOSPORIN have been almost $800 million.

29. As a result of Plaintiff's extensive sales and marketing efforts, consumers associate the NEOSPORIN Signature Gold Mark and NEOSPORIN Trade Dress, separately and jointly, with Plaintiff, and they view the NEOSPORIN Signature Gold Mark and NEOSPORIN Trade Dress as designating the source of Plaintiff's NEOSPORIN Products.

30. Plaintiff has spent enormous sums of money to market, advertise, promote, and sell in interstate commerce NEOSPORIN Products bearing the NEOSPORIN Signature Gold Mark and NEOSPORIN Trade Dress. As a result, and because of the overwhelming success and sale of the NEOSPORIN Products and the celebrity that the NEOSPORIN Signature Gold Mark and the NEOSPORIN Trade Dress, separately and jointly, have achieved, products bearing the

25703450.1                                                    - 8 -

NEOSPORIN Signature Gold Mark and the NEOSPORIN Trade Dress have been and are now recognized, separately and jointly, by the public and in the trade as originating from Plaintiff.

31. NEOSPORIN Products bearing the NEOSPORIN Signature Gold Mark and the NEOSPORIN Trade Dress have been and continue to be sold within this judicial district and elsewhere in the United States.

32. NEOSPORIN Products bearing the NEOSPORIN Signature Gold Mark and the NEOSPORIN Trade Dress have come to be known, separately and jointly, by the purchasing public throughout the United States as products of the highest quality. Therefore, both the NEOSPORIN Signature Gold Mark and the NEOSPORIN Trade Dress, together with the goodwill associated with each of them, are of inestimable value to Plaintiff.

33. As a result of Plaintiff's extensive use and promotion of the NEOSPORIN Signature Gold Mark and the NEOSPORIN Trade Dress, separately and jointly, in this judicial district and elsewhere in the United States, Plaintiff has acquired extremely valuable rights in the NEOSPORIN Signature Gold Mark, the NEOSPORIN Trade Dress, and the goodwill associated with each of them.

34. Plaintiff has engaged and continues to engage in interstate activities designed to promote the NEOSPORIN Products and the business and goodwill associated with the NEOSPORIN Signature Gold Mark and the NEOSPORIN Trade Dress, separately and jointly, and to expand the use and reputation of each of them in this judicial district and elsewhere in the United States.

25703450.1                                                                                    - 9 -

Defendants' Unlawful Activities

35. According to its website,

> Actavis is a leading player in the development, manufacture and sale of high-quality generic pharmaceuticals.

Actavis, http://www.actavis.com, (last visited Oct. 3, 2006).

> Actavis currently offers one of the broadest product portfolios in the generics sector with over 600 products on the market, in addition to the around 300 products in the development pipeline.
>
> • Actavis' capabilities include a wide variety of solid dose, liquid and cream/ointment manufacturing.
>
> • Its packaging facilities have an in-house label graphics department and packaging engineering staff.

*Id.* At http://www.actavis.com/aboutactavis, (last visited Oct. 4, 2006); Actavis,

http://www.actavis.us/pages/Betpage.aspx?id=172672B9-7870-4796-8C3D-7955E786F2Dle

(last visited Oct. 3, 2006).

36. Defendants manufacture and sell a variety of topical, first aid antibiotic ointments and creams to retailers who use their own "store brand" names on the products. Defendants base a part of this business on imitations of Plaintiff's products.

37. Among those drug retailers for which Defendants manufacture products and packaging, including Defendants' Infringing Products, are CVS Pharmacy, Inc. ("CVS") and Walgreens Co. ("Walgreens"). True and correct depictions of Defendants' Infringing Products, packaged and sold under the CVS and Walgreens brands, are attached hereto as Exhibits 4-5.

38. Long after Plaintiff's first use of the NEOSPORIN Trade Dress and the NEOSPORIN Signature Gold Mark, and fully aware of both the NEOSPORIN Trade Dress and the NEOSPORIN Signature Gold Mark, and the goodwill associated with each of them, Defendants manufactured, distributed, offered for sale, or sold in this judicial district and

elsewhere in the United States, in direct competition with the NEOSPORIN Products,

Defendants' Infringing Products under the designations "antibiotic ointment," "antibiotic

cream," "antibiotic+pain relief," "triple antibiotic," and various combinations of those words,

with various combinations of the elements of the NEOSPORIN Trade Dress described above and

below ("Defendants' Infringing Trade Dress"), and without authorization and in a manner

designed to confuse consumers and to dilute the value of the NEOSPORIN Trade Dress and the

NEOSPORIN Signature Gold Mark.

39.   Defendants' Infringing Trade Dress includes packaging of Defendants' Infringing

Products that employs a similarly shaped box, labeling, color scheme, and other elements of the

NEOSPORIN Trade Dress. For example, Defendants selected as part of their color scheme for

use on Defendants' Infringing Products a gold color the same as or confusingly similar to the

NEOSPORIN Signature Gold Mark, and they use it as a predominant color. As another

example, Defendants' Infringing Products have the same color scheme as the NEOSPORIN

Trade Dress, used to distinguish between the types of products (for example, NEOSPORIN

Original, NEOSPORIN Plus Pain Ointment, and NEOSPORIN Plus Plain Cream). For example,

see below for a side-by-side comparison of the NEOSPORIN Products and the CVS Products.

See Exhibit 7 for a side-by-side comparison of the NEOSPORIN Products and each of

defendants' Infringing Products.

# NEOSPORIN                         CVS

 

 

 

 

40.

41.     The following chart compares the elements of the NEOSPORIN Trade Dress to

the elements of Defendants' Infringing Trade Dress for the CVS Products and the Walgreen

Products:[1]

| NEOSPORIN Trade Dress | CVS Products | Walgreens Products |
|---|---|---|
| On its packaging: | On its packaging: | On its packaging: |
| ● A rectangular box | ● SAME | ● SAME |
| ● Upright extension label on rear of box | ● SAME | ● SAME |
| BOX: Background Color: NEOSPORIN Signature Gold Mark | BOX: ● Background Color: SAME or confusingly similar | BOX: ● Background Color: SAME or confusingly similar |
| ● Text: NEOSPORIN Green for product name and ingredients and, the following, depending on product: | ● Text: SAME or confusingly similar as noted below: | ● Text: SAME or confusingly similar as noted below |
| 1. NEOSPORIN Plus Pain Ointment- "NEOSPORIN Blue" for "+ Pain Relief" <br> 2. NEOSPORIN Plus Pain Cream- "NEOSPORIN Turquoise" for "+Pain Relief" | 1. SAME or confusingly similar <br><br><br><br><br> 2. SAME or confusingly similar | 1. SAME or confusingly similar <br><br><br><br><br> 2. SAME or confusingly similar |
| ● Banner depending on product: <br><br> 1. NEOSPORIN Original: <br> ● NEOSPORIN Green <br> ● "Original" in white | ● Banner: SAME or confusingly similar as noted below: | ● Banner: White with red lettering for Walgreens name |

---

[1]   See also Exhibit 6, which includes a more detailed description of Defendants' Infringing Trade Dress.

| NEOSPORIN Trade Dress | CVS Products | Walgreens Products |
|---|---|---|
| 2. <u>NEOSPORIN Plus Pain Ointment</u>:<br>• NEOSPORIN Blue<br>• "MAXIMUM STRENGTH" in white<br><br>3. <u>NEOSPORIN Plus Pain Cream</u>:<br>• NEOSPORIN Blue<br>• "MAXIMUM STRENGTH" in white | 1. SAME or confusingly similar<br><br>2. SAME or confusingly similar<br><br><br><br>3. SAME or confusingly similar<br><br><br><br>• <u>Additional item</u>: Caduceus (*see* NEOSPORIN Trade Dress, Extension Label, *supra* this chart, for caduceus) | |
| **EXTENSION LABEL:**<br>• Curving arrow in Signature Gold Mark<br><br><br><br>• Caduceus on right side<br><br><br><br>• Background color and colored band on top in different colors | **EXTENSION LABEL:**<br>• Waving banner in NEOSPORIN Signature Gold with phrase "NEW" in red<br><br>• SAME (*see* Defendants' CVS Version, Box, *infra*)<br><br>• SAME or confusingly | **EXTENSION LABEL:**<br>• SAME or confusingly similar<br><br><br><br>• None<br><br><br><br>• SAME or confusingly |

| NEOSPORIN Trade Dress | CVS Products | Walgreens Products |
|---|---|---|
| depending on product | similar as noted below: | similar as noted below: |
| 1. Original NEOSPORIN:<br>*Background*: NEOSPORIN Green<br>  ◦ *Text*:<br>    -"Effective, Long-Lasting Infection Protection" in NEOSPORIN Green<br>    -"Triple Antibiotic Protection" in white<br>  ◦ *Band*:<br>    -"NEOSPORIN Red"<br>    -"NEOSPORIN® ANTIBIOTIC OINTMENT" in white | 1. SAME or confusingly similar | 1. SAME or confusingly similar |
| 2. NEOSPORIN Plus Pain Ointment:<br>  ◦ *Background*: NEOSPORIN Blue<br>  ◦ *Text*:<br>    -"Soothes painful cuts, scrapes and burns while preventing infection" in NEOSPORIN Blue<br>    -"Maximum Strength Pain Relief" in white<br>  ◦ *Band*:<br>    -NEOSPORIN Red<br>    -"NEOSPORIN® ANTIBIOTIC OINTMENT" in white | 2. SAME or confusingly similar | 2. SAME or confusingly similar |
| 3. NEOSPORIN Plus Pain Cream:<br>  ◦ *Background*: NEOSPORIN Blue<br>  ◦ *Text*:<br>    -"Soothes painful cuts, | 3. SAME or confusingly similar | 3. SAME or confusingly similar |

| NEOSPORIN Trade Dress | CVS Products | Walgreens Products |
|---|---|---|
| scrapes and burns while preventing infection" in NEOSPORIN Blue - Maximum Strength Pain Relief" in white ● *Band*: -NEOSPORIN Turquoise -NEOSPORIN® ANTIBIOTIC CREAM" in white | | |
| On the 0.5 ounce tube:[2] | On the tube: | On the tube: |
| ● White needle-nose shaped tube | ● SAME | ● SAME |
| ● Rectangular box in NEOSPORIN Signature Gold containing same trade dress for the box as described above | ● SAME | ● SAME |
| On the 1.0 ounce tube:[3] | N/A[4] | On the 1.0 ounce tube: |
| ● White round-capped tube | ● N/A | ● SAME |
| ● Rectangular box in NEOSPORIN Signature Gold, inside box, same trade dress for the box as described above | | ● SAME |

42.     Defendants have deliberately and willfully violated Plaintiff's trade dress rights in

the NEOSPORIN Products and trademark rights in the NEOSPORIN Signature Gold Mark, and

---

[2]   The tubes containing the NEOSPORIN Products are visible presale when sold in Pfizer's "blister pack" and on marketing and advertising. The tubes are also visible post sale when sold in the packaging described above.

[3]   The tubes containing the 1.0 ounce version of the Original NEOSPORIN and NEOSPORIN Plus Pain Ointment are visible post sale when sold in the packaging described above. Plaintiff does not market a 1.0 ounce NEOSPORIN Plus Pain Cream.

[4]   Defendants' CVS Products do not come in a 1.0 ounce version. Defendants do market a 1.0 ounce topical antibiotic product, but do so in their "old" packaging, which is not at issue here.

- 16 -

are intentionally trading on the immense goodwill developed in both, by using trade dress and the gold color so as to cause a likelihood of confusion among consumers and the trade, to dilute the overall value of the NEOSPORIN Trade Dress and the NEOSPORIN Signature Gold Mark, and to cause a likelihood that the overall value of the NEOSPORIN Trade Dress and the NEOSPORIN Signature Gold Mark has been, is being, and will be diluted.

43.     Indeed, Defendants recently changed the packaging for CVS and Walgreens to the above packaging to make them look more like the NEOSPORIN Trade Dress. For example, Defendants changed the packaging on Defendants' CVS and Walgreens Products from a pale yellow color to the color gold in a shade the same as or confusingly similar to the NEOSPORIN Signature Gold Mark and used it more predominantly on the package, like the NEOSPORIN Trade Dress. In addition, Defendants changed the color on the label extension and lettering to a green color confusingly similar to NEOSPORIN Green. Defendants also added a band along the top of each the label extension on their packaging in the same color combination as the NEOSPORIN Trade Dress. Furthermore, Defendants, at least on their CVS Products, added the same "effective, long lasting infection protection" message on the extension label as used on the NEOSPORIN Trade Dress. Additionally, Defendants, at least on their Walgreens Products, added a curving swoosh confusingly similar to the distinctive curving arrow on the NEOSPORIN Products. These recent changes increased dramatically the overall impression that the packaging is confusingly similar to the NEOSPORIN Trade Dress. See below for the "before and after" pictures of the CVS and Walgreens Products:



Effect of Defendants' Activities on Plaintiff and the Consuming Public

44.     Defendants' unauthorized use of the NEOSPORIN Trade Dress and a color the same as or confusingly similar to the NEOSPORIN Signature Gold Mark, separately and jointly, in the manner described above is likely to cause confusion or mistake or to deceive Plaintiff's customers and potential customers and other relevant members of the public, at least as to affiliation, connection, or association between Defendants, or the retail chains to which Defendants have sold Defendants' Infringing Products, and Plaintiff, or as to the origin, source, sponsorship, or approval of Defendants' Infringing Products.

45.     Defendants' unauthorized use of the NEOSPORIN Trade Dress and a color the same as or confusingly similar to the NEOSPORIN Signature Gold Mark falsely indicates to the purchasing public that Defendants' goods or services originate with Plaintiff or are affiliated, connected, or associated with Plaintiff, or are sponsored, endorsed, or approved by Plaintiff, or are in some manner related to Plaintiff or its goods.

46.     Defendants' unauthorized use of the NEOSPORIN Trade Dress and a color the same as or confusingly similar to the NEOSPORIN Signature Gold Mark falsely designates the origin of Defendants' Infringing Products and falsely and misleadingly describes and represents facts with respect to Defendants and Defendants' Infringing Products.

47.     Defendants' unauthorized use of the NEOSPORIN Trade Dress and a color the same as or confusingly similar to the NEOSPORIN Signature Gold Mark enables them to trade on and to receive the benefit of the goodwill in the NEOSPORIN Trade Dress, which Plaintiff has built up with great labor and expense over many years. Defendants' unauthorized use also enables them to gain acceptance for their own goods, not solely on their own merits, but on the reputation and goodwill of Plaintiff, the NEOSPORIN Trade Dress, and the NEOSPORIN Signature Gold Mark.

48.     Defendants' unauthorized use of the NEOSPORIN Trade Dress and a color the same as or confusingly similar to the NEOSPORIN Signature Gold Mark dilutes, has diluted, and is likely to dilute the distinctive quality of the famous NEOSPORIN Trade Dress.

49.     Defendants' unauthorized use of the NEOSPORIN Trade Dress and use of a color the same as or confusingly similar to the NEOSPORIN Signature Gold Mark began after the NEOSPORIN Trade Dress became famous.

50.     Defendants' unauthorized use of the NEOSPORIN Trade Dress and a color the same as or confusingly similar to the NEOSPORIN Signature Gold Mark unjustly enriches Defendants at Plaintiff's expense.

51.     Defendants' unauthorized use of the NEOSPORIN Trade Dress and a color the same as or confusingly similar to the NEOSPORIN Signature Gold Mark deprives Plaintiff of the ability to control the nature and quality of goods provided under the NEOSPORIN Trade

25703450.1                                                  - 19 -

Dress and the NEOSPORIN Signature Gold Mark and places the valuable reputation and

goodwill of Plaintiff in the hands of Defendants, over which Plaintiff has no control.

52. Plaintiff has been and continues to be damaged by Defendants' activities and

conduct. Defendants have profited thereby and, unless enjoined, Plaintiff's business, goodwill,

and reputation will suffer irreparable injury, which cannot be adequately calculated or

compensated solely by money damages.

## FIRST CAUSE OF ACTION:
## Federal Trademark Infringement and Unfair Competition

53. Plaintiff repeats and realleges each and every paragraph set forth above as if fully

set forth herein.

54. The acts of Defendants complained of herein constitute trademark infringement

and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## SECOND CAUSE OF ACTION:
## Federal Trade Dress Infringement

55. Plaintiff repeats and realleges each and every paragraph set forth above as if fully

set forth herein.

56. The acts of Defendants complained of herein constitute infringement of Plaintiff's

trade dress in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## THIRD CAUSE OF ACTION:
## Federal False Designation Of Origin

57. Plaintiff repeats and realleges each and every paragraph set forth above as if fully

set forth herein.

58. The acts of Defendants complained of herein constitute false designation of origin

and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

25703450.1 - 20 -

## FOURTH CAUSE OF ACTION:
### Federal Trade Dress Dilution

59.     Plaintiff repeats and realleges each and every paragraph set forth above as if fully

set forth herein.

60.     The acts of Defendants complained of herein constitute dilution of Plaintiff's

trade dress in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

## FIFTH CAUSE OF ACTION:
### New York Deceptive Trade Practices

61.     Plaintiff repeats and realleges each and every paragraph set forth above as if fully

set forth herein.

62.     The acts of Defendants complained of herein constitute deceptive trade practices

in violation of New York General Business Law § 349.

## SIXTH CAUSE OF ACTION:
### New York Dilution

63.     Plaintiff repeats and realleges each and every paragraph set forth above as if fully

set forth herein.

64.     The acts of Defendants complained of herein constitute trade dress dilution in

violation of New York General Business Law § 360-1.

## SEVENTH CAUSE OF ACTION:
### Common Law Unfair Competition

65.     Plaintiff repeats and realleges each and every paragraph set forth above as if fully

set forth herein.

66.     The acts of Defendants complained of herein constitute unfair competition in

violation of the common law of the State of New York.

25703450.1                                          - 21 -

## EIGHTH CAUSE OF ACTION:
Unjust Enrichment

67.     Plaintiff repeats and realleges each and every paragraph set forth above as if fully set forth herein.

68.     The acts of Defendants complained of herein constitute unjust enrichment of Defendants at Plaintiff's expense in violation of the common law of the State of New York.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that:

(a)     Defendants, their agents, servants, employees, and all those persons in active concert or participation with Defendants, be preliminarily and permanently enjoined and restrained from:

(i)     using in any manner, on, with, or in connection with any of Defendants' Infringing Products, or any other topical antibiotic product that does not originate with Plaintiff, Defendants' Infringing Trade Dress as defined herein, or trade dress confusingly similar thereto;

(ii)     using in any manner, on, with, or in connection with any of Defendants' Infringing Products, or any other topical antibiotic product that does not originate with Plaintiff, the NEOSPORIN Trade Dress, as defined herein, or any trade dress confusingly similar thereto, that is likely to cause confusion, deception, or mistake or that dilutes or is likely to dilute the distinctive quality thereof;

(iii)     using in any manner, on, with, or in connection with any of Defendants' Infringing Products, or any other topical antibiotic product that does not originate with Plaintiff, the NEOSPORIN Signature Gold Mark, as defined herein, or any other color that is the same as or confusingly similar thereto, that is likely to cause confusion, deception, or mistake or that dilutes or is likely to dilute the distinctive quality thereof;

25703450.1                                    - 22 -

(iv) using in any manner, on, with, or in connection with any of Defendants'

Infringing Products, or any other topical antibiotic product that does not originate with Plaintiff,

any of the following, alone or in combination:

(A) On packaging of any topical, antibiotic products
Defendants manufacture, offer to sell, sell, or distribute:

(1) a rectangular box, with an upright extension label
on the rear of the box;

(2) the color gold, including the distinctive gold color
NEOSPORIN Signature Gold Mark or any other color the same or confusingly
similar to the NEOSPORIN Signature Gold Mark, as the predominant background
color;

(3) the color green, including the distinctive green color
NEOSPORIN Green or any other color the same or confusingly similar to
NEOSPORIN Green, for the lettering of the product name and other lettering on
the front panel;

(4) a curving arrow or swoosh;

(5) the color gold, including the NEOSPORIN
Signature Gold Mark or any other color the same or confusingly similar to the
NEOSPORIN Signature Gold Mark, on the curving arrow or swoosh;

(6) a caduceus on the upright extension label or the face
of the box;

(7) a colored band along the top of the upright
extension label with the name of the product on the band;

(8) the following colors as the predominant background
color on any upright extension label, in a band along the top of that upright
extension label:

(a) For Defendants Products in the "Original"
forms, the color green, including NEOSPORIN Green or any other color the same
or confusingly similar to NEOSPORIN Green, for the background color and the
color red, including the distinctive red color NEOSPORIN Red or any other color
the same or confusingly similar to NEOSPORIN Red, for the band;

(b) For Defendants' Infringing Products in the
"Plus Pain Ointment" forms the color blue, including the distinctive blue color

NEOSPORIN Blue or any other color the same or confusingly similar to NEOSPORIN Blue, for the background color, the phrase "+Pain Relief," and the block used as background for the white-lettered "MAXIMUM STRENGTH," and NEOSPORIN Red or any other color the same or confusingly similar to NEOSPORIN Red, for the band; and

(c)     For Defendants' Infringing Products in the "Plus Pain Cream" forms, the color blue, including NEOSPORIN Blue any other color the same or confusingly similar to NEOSPORIN Blue, for the background color and the distinctive turquoise color NEOSPORIN Turquoise any other color the sane or confusingly similar to NEOSPORIN Turquoise, for the band and the phrase "+Pain Relief).

(9)     Use of the following phrases on the upright extension:

(a)     For Defendants' Infringing Products in the "Original" forms, "Effective, Long-Lasting Infection Protection" and "Triple Antibiotic Protection."

(b)     For Defendants' Infringing Products in the plus pain ointment form, "Soothes painful cuts, scrapes and burns while preventing infection" and "Maximum Strength Pain Relief."

(c)     For Defendants' Infringing Products in the plus pain cream form, "Soothes painful cuts, scrapes and burns while preventing infection" and "Maximum Strength Pain Relief."

(B)     On the tube of any topical, antibiotic products Defendants manufacture, offer to sell, or distribute:

(1)     the color gold, including NEOSPORIN Signature Gold Mark and any other color confusing similar to NEOSPORIN gold, and including its use in a rectangular block to frame the lettering of the product name;

(2)     NEOSPORIN Green for the lettering of the product name and other lettering on the tube;

(3)     Use of white as a background color on the tube and the tube cap; or

(4)     The tube itself, in the distinctive needle-nosed shape of Plaintiff's NEOSPORIN products.

(v)     passing off, inducing, or enabling others to sell or pass off Defendants'

Infringing Products and any other product as and for products produced by Plaintiff, not

25703450.1                                  - 24 -

Defendants, or not produced under the control and supervision of Plaintiff and approved by Plaintiff for sale under the NEOSPORIN Trade Dress or NEOSPORIN Signature Gold Mark;

(vi)    engaging in any other conduct that tends falsely to represent, or is likely to confuse, mislead, or deceive purchasers, Defendants' customers, and other members of the public to believe that Defendants' Infringing Products and Defendants are connected with Plaintiff or are sponsored, approved, or licensed by Plaintiff, or are in some way connected or affiliated with Plaintiff;

(vii)   further diluting and infringing the NEOSPORIN Trade Dress or NEOSPORIN Signature Gold Mark and damaging Plaintiff's goodwill;

(viii)  using any reproduction, counterfeit, copy, or colorable imitation of any of the NEOSPORIN Trade Dress or NEOSPORIN Signature Gold Mark in connection with Defendants' publicity, promotion, offer to sell, distribution or advertising of products;

(ix)    affixing, applying, annexing, or using in connection with the manufacture, advertising, receiving, acquisition, importation, shipment, purchase, sale, offer for sale, or distribution of any goods, a false description or representation including words or other symbols tending falsely to describe or represent such goods as being Plaintiff's products and from offering such goods in commerce;

(x)     destroying any records documenting the manufacture, sale, offer to sell, distribution, location, or receipt of Defendants' Infringing Products; and

(xi)    assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (x), above;

25703450.1                                               - 25 -

(b)     Defendants be required to deliver to the Court for destruction, or to show proof of destruction of, any and all products, labels, signs, prints, packages, wrappers, receptacles, and advertisements in Defendants' possession or control that use Defendants' Infringing Trade Dress or any other trade dress or design similar to the NEOSPORIN Trade Dress or NEOSPORIN Signature Gold Mark or that incorporate the NEOSPORIN Trade Dress or NEOSPORIN Signature Gold Mark and any molds, dies, screens, or other devices to produce the same;

(c)     Defendants be ordered to notify their and any subsidiaries' customers, in writing, that they are not to sell Defendants' Infringing Products and that said customers are to impound and return all units of Defendants' Infringing Products to Defendants;

(d)     Defendants be ordered to file with this Court and to serve upon Plaintiff, within 30 days after the entry and service on Defendants of each injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

(e)     Plaintiff recover all damages sustained as a result of Defendants' activities and that said damages be trebled;

(f)     An accounting be directed to determine Defendants' profits resulting from their and their subsidiaries' activities and that such profits be paid over to Plaintiff, increased as the Court finds to be just under the circumstances of this case;

(g)     Plaintiff recover its reasonable attorneys' fees;

(h)     Plaintiff recover punitive damages and its costs of this action, together with prejudgment and post-judgment interest; and

(i)     Plaintiff recover such other and further relief as the Court deems just and proper.

Dated: October 5, 2006          FULBRIGHT & JAWORSKI L.L.P.
New York, New York

By:

Mark N. Mutterperl (MM 1977)
Anita Tucker Smith (AS 2822)
Jessica S. Parise (JP 6111)

666 Fifth Avenue, 31st Floor
New York, New York 10103
Tel.: (212) 318-3000
Fax: (212) 318-3400
E-mails: mmutterperl@fulbright.com
         atsmith@fulbright.com
         jparise@fulbright.com

*Attorneys for Plaintiffs Pfizer Inc. and*
*Warner-Lambert Company LLC*

## JURY DEMAND

Plaintiffs Pfizer Inc. and Warner-Lambert Company LLC demand trial by jury of all

issues so triable.

Mark N. Mutterperl

25703450.1                                  - 27 -